DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARTIN GEORGE DECKER,

                Plaintiff,

    - against -

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 9, 2013

**ORDER**

11 Civ. 5593 (PGG) (GWG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Martin Decker filed this action on August 11, 2011 pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the Commissioner of Social Security's denial of his application for disability insurance benefits.  (Dkt. No. 1)  On August 22, 2011, this Court referred this action to Magistrate Judge Gabriel W. Gorenstein for a Report and Recommendation ("R&R").  (Dkt. No. 2)  On April 17, 2012, Plaintiff moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Dkt. No. 11), and on May 23, 2012, the Commissioner cross-moved for judgment on the pleadings.  (Dkt. No. 14)  On April 19, 2013, Judge Gorenstein issued an R&R recommending that the Court grant the Commissioner's motion for judgment on the pleadings and deny Plaintiff's motion.  (Dkt. No. 19)  For the reasons stated below, the Court will adopt the R&R of Judge Gorenstein in its entirety.

**BACKGROUND**

    A.    **Plaintiff's Application and Initial Denial**

        Plaintiff was born in 1977.  (R&R at 3)  On January 10, 2008, he applied to the Social Security Administration for disability insurance benefits, alleging that he had become

disabled on November 20, 2006, as a result of back problems.  (R&R at 2; R. at 27, 117-24)[1]
Plaintiff had most recently worked at a plumbing warehouse, and had previously worked in a metal shop cutting steel, as a forklift operator, as a truck driver, as a factory laborer, and as a bed assembler.  (R. at 29-32)  Plaintiff's application for benefits was denied on May 15, 2008.  (R. at 65-68)

### B. Hearing Before ALJ Gonzalez

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (R. at 71-72)  On November 17, 2009, a hearing was held before ALJ Robert Gonzalez, at which Plaintiff was represented by counsel.  (R. at 22-63)  At the hearing, Plaintiff testified that he stopped working in November 2006 because he "thought [he] pulled a muscle in [his] back but it was [more serious] than a muscle pull, . . . [and has] been hurting ever since."  (R. at 27)  Decker filed a claim for worker's compensation at that time, but the claim was denied.  (R. at 28-29)

Plaintiff stated that his back is "always hurting" and described the pain as "sharp, shooting pains which [are] constantly in [his] back, go[ing] down right through [his] legs and out [his] toes."  (R. at 38)  He rated his pain as "at least a nine" on a scale with ten representing excruciating pain.  (R. at 38)  He stated that medications and treatments – including lumbar epidural steroid injunctions – are not effective and only reduce his pain to an eight on the same scale.  (See R. at 38-41, 45-47)  Plaintiff testified that as a result of his back pain, he has difficulty sleeping, does not help with household chores, rarely uses a computer, goes shopping with his girlfriend only once in a while, and drives a car about twice a week.[2]  (R. at 33, 41-43)

---

[1]  "R." refers to the administrative record.
[2]  On February 25, 2008, Plaintiff completed a questionnaire for the New York State Office of Temporary and Disability Assistance Division of Disability Determination.  He stated that his daily activities consist of watching television, that he could not sit, stand, or lie down for long

2

Plaintiff also testified that he suffers from diabetes and depression – for which he takes medication – and from asthma.  (R. at 34-38, 47)

David Sypher, a vocational expert, testified that a person in Decker's condition (1) could perform light work limited to simple, routine tasks; (2) could occasionally climb, balance, stoop, kneel, and crouch; but (3) would have to avoid fumes, odors, dust, gases, and areas with poor ventilation.  (See R. at 51-54)  Sypher identified the job of electrical assembler as an occupation that Decker could perform.  (See R. at 53)  Sypher testified that there are 115,230 of these jobs nationally, 15,170 statewide, and 440 locally.  (R. at 53-54)  In offering these statistics, Sypher relied on the Dictionary of Occupational Titles and Selected Characteristics of Occupations, both of which are available on the Department of Labor's website.  (R. at 51, 58)  Sypher further testified that he believes that the data set forth in these materials is accurate.  (R. at 51, 58-60)

### C. ALJ Gonzalez's Decision

On December 9, 2009, ALJ Gonzalez issued a decision finding that Plaintiff is not disabled and therefore is not eligible for disability insurance benefits.  (R. at 11-21)  In determining whether Plaintiff is disabled, the ALJ applied the five-step sequential analysis set forth in 20 C.F.R. § 404.1520(a)(4).[3]  (R. at 15)  The ALJ determined that (1) Plaintiff had not

---

periods, that he needed help tying his shoes and showering, that he goes outside twice a week, that he cannot drive, and that he uses a motorized wheelchair when shopping.  (R. at 147-52)
[3]  The Second Circuit has described this analysis as follows:

> "First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him

engaged in substantial gainful activity since November 20, 2006; (2) Plaintiff has the following severe impairments: back injury, depression, asthma, and diabetes; (3) Plaintiff does not have an impairment or combination of impairments that meet or equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) Plaintiff has the residual functional capacity to perform light work[4] limited to simple, routine tasks, except that he has occasional physical limitations and should avoid concentrated exposure to dust, fumes, odors, gases, and areas with

---

> disabled without considering vocational factors such as age, education, and work experience. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform."

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)).

[4] Under the applicable Social Security Administration regulations,

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the Commissioner] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b). The regulations also provide that

> [s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

poor ventilation; and (5) there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 16-21)

At step four, the ALJ determined, "[a]fter careful consideration of the evidence," that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [a] residential functional capacity [to perform light work]."  (R. at 18)  The ALJ reviewed medical records from multiple doctors who treated Plaintiff's back pain, diabetes, asthma, and depression from 2006 through 2009 and determined that "the medical evidence does not substantiate the allegations of [Plaintiff] to the degree alleged."  (R. at 18-19)

With regard to Plaintiff's back pain, the ALJ found that "[a]lthough [Plaintiff] has been treated for chronic back pain, he has no history of any surgery or hospitalizations for his condition[,]" "MRI studies show only mild findings[,]" "EMG studies were also negative[,]" and "[a] consultative examination revealed normal gait and station with subjective limitation of motion and full 5/5 muscles strength."  (R. at 19)  With regard to Plaintiff's diabetes and asthma, the ALJ found that Plaintiff had never been hospitalized for these conditions.  (R. at 19)  Finally, with regard to Plaintiff's depression, the ALJ found that Plaintiff's "allegations of disabling psychological limitations are also not supported by the record."  (R. at 19)  The ALJ noted that Plaintiff "only initially sought treatment at the request of his attorney," and that the "treatment reports repeatedly show essentially normal mental function status examinations."  (R. at 19)

Overall, the ALJ determined that the consultative examiner's opinion that Plaintiff "had only mild limitations in exertional activities" was "supported by the record as a whole[,]" and "[t]here is no treating source opinion which specifically supports a more limited

5

residual functional capacity." (R. at 19) "In sum, [the ALJ found that a] residual functional capacity [to perform light work with some limitations] is supported by the minimal diagnostic test results, the conservative nature of the care given[,] and the findings and opinion of the consultative examiner." (R. at 20)

On June 17, 2011, the Social Security Administration Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision. (R. at 1-3)

### D. District Court Proceedings

Plaintiff filed this action on August 11, 2011, seeking review of the denial of his application for disability insurance benefits. (Dkt. No. 1) On August 22, 2011, this Court referred this action to Magistrate Judge Gorenstein. (Dkt. No. 2) On April 17, 2012, Plaintiff moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Dkt. No. 11), and on May 23, 2012, the Commissioner cross-moved for judgment on the pleadings. (Dkt. No. 14) On April 19, 2013, Judge Gorenstein issued an R&R recommending that the Court grant the Commissioner's motion for judgment on the pleadings and deny Plaintiff's motion. (Dkt. No. 19) The R&R states that "the parties have fourteen (14) days . . . to serve and file any objections" to the R&R, and that "[i]f a party fails to file timely objections, that party will not be permitted to raise any objections to this [R&R] on appeal." (R&R at 24-25) Neither party has filed any objections to the R&R.

## DISCUSSION

### I. STANDARD OF REVIEW

This Court "may accept, reject, or modify in whole or in part" findings or recommendations issued by a magistrate judge. 28 U.S.C. § 636(b)(1). "'The district judge

evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.'" Gilmore v. Comm'r of Soc. Sec., No. 09 Civ. 6241(RMB) (FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) (quoting Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003)).

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (citation and internal quotation marks omitted); accord Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citations and internal quotation marks omitted).

## II.     ANALYSIS

Plaintiff's seeks to overturn the ALJ's determination or, in the alternative, a remand for further fact finding.  He argues that (1) the ALJ failed to set forth his residual functional capacity finding in a manner sufficient to permit a court to carry out its reviewing function; (2) the ALJ erred in assessing the claimant's credibility and failed to evaluate his subjective complaints properly; (3) the ALJ failed to develop the administrative record; and (4) the Commissioner failed to meet his burden at step five of the sequential evaluation process. (R&R at 16; see also Pltf. Br. 5-6)

7

In a cross-motion for judgment on the pleadings, the Commissioner counters that (1) the ALJ's residual functional capacity assessment is supported by substantial evidence; (2) the ALJ's finding that Plaintiff's subjective complaints are not credible is supported by substantial evidence; (3) the ALJ properly developed the administrative record; and (4) the ALJ's finding that significant numbers of jobs exist that Plaintiff can perform is supported by substantial evidence. (See Def. Br. 15, 22, 25, 29)

Judge Gorenstein's analysis of each of these arguments is not clearly erroneous.

### A.   The ALJ's Residual Functional Capacity Assessment Is Adequately Supported

Judge Gorenstein properly found that the ALJ adequately explained his determination that Plaintiff had a residual functional capacity to perform light work with certain limitations. (R&R at 17-18) Contrary to Plaintiff's contention (see Pltf. Br. 7, 11), the ALJ was not required to conduct a "function-by-function" assessment of Plaintiff's ability to work. See Novak v. Astrue, No. 07 Civ. 8435, 2008 WL 2882638, at *3 (S.D.N.Y. July 25, 2008) ("Although the Second Circuit has not specifically addressed this question, several courts have held that the function-by-function requirement of SSR 96–8p does not apply to the A.L.J. The A.L.J. must avoid perfunctory determinations by considering all of the claimant's functional limitations, describing how the evidence supports [his or] her conclusions, and discussing the claimant's ability to maintain sustained work activity, but [he or] she need not provide a narrative discussion for each function."); (see also R&R at 17-18 (citing cases); Def. Br. 19-20 (same)).

Here, the ALJ relied on medical records from multiple doctors over a period of several years. (See R. at 18-20; see also Def. Br. 15-19 (citing medical reports)) The ALJ concluded that the medical evidence included only "minimal diagnostic test results" and

8

"conservative" care.  (R. at 20)  The ALJ's assessment also took into account Plaintiff's ability to only "occasionally climb, balance, stoop, kneel, crouch, and crawl[;]" his need to "avoid concentrated exposure to dust, fumes, odors, gases and [areas with] poor ventilation[;]" and his ability to perform only "simple, routine tasks."  (R. at 17)  Moreover, as the ALJ noted, "[t]here is no treating source opinion which specifically supports a more limited residual functional capacity."  (R. at 19)  Accordingly, Judge Gorenstein's determination that the ALJ's residual functional capacity assessment is adequately explained is not clearly erroneous.

Plaintiff further argues that the ALJ erred by "discounting [Plaintiff's] credibility because [his] alleged symptoms were not consistent with his [residual functional capacity]." (Pltf. Br. 11)  Plaintiff claims that the ALJ should first have assessed the credibility of Plaintiff's symptoms and then determined Decker's residual functional capacity.  (Pltf. Br. 11)  As Judge Gorenstein noted, however, in determining Plaintiff's residual functional capacity, the ALJ expressly "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence."  (R&R at 18 (quoting R. at 17)) Read as a whole, the ALJ's decision discounts Plaintiff's subjective description of his pain and limitations as inconsistent with the objective medical evidence.  (R&R at 18 (citing R. at 17-19)) Accordingly, Judge Gorenstein's finding that the ALJ made a residual functional capacity determination after taking Plaintiff's alleged symptoms into account is not clearly erroneous.

      **B.**    <u>**The ALJ Properly Evaluated Plaintiff's Subjective Complaints**</u>

Judge Gorenstein did not err in determining that the ALJ properly evaluated Plaintiff's subjective complaints.  As Judge Gorenstein noted, Social Security Administration regulations provide that a claimant's "statements about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability to work . . . [will not

9

be rejected] solely because the available objective medical evidence does not substantiate [his] statements." 20 C.F.R. § 416.929(c)(2).  The regulations further provide, however, that the Commissioner "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." Id. § 416.929(c)(4).

As Judge Gorenstein noted, the Second Circuit has held that where an ALJ rejects witness testimony as not credible, the basis for the finding "must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988).  Where an ALJ gives specific reasons for finding a claimant not credible, the ALJ's credibility determination "is generally entitled to deference on appeal." Selian, 708 F.3d at 420.

Here, as Judge Gorenstein found, the ALJ did not wholly reject Plaintiff's subjective statements.  (R&R at 20)  Indeed, the ALJ found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (R. at 18; see also R&R at 20)  As directed by the regulations, the ALJ then considered the inconsistencies between Plaintiff's subjective statements and the objective medical evidence.  (See R&R at 20; R. at 17-20)  Plaintiff argues that the ALJ selectively ignored portions of the record that deal with Plaintiff's severe impairments, substituted his judgment for a competent medical opinion, and gave improper weight to the treating physician.  (See Pltf. Br. 13; Pltf. Reply Br. 4, 6-7; R&R 21)  As Judge Gorenstein noted, however, Plaintiff does not point to any medical opinion or portion of the record that is inconsistent with the ALJ's finding.  (R&R at 21)  Accordingly, Judge Gorenstein did not err in determining that the ALJ properly evaluated the credibility of Plaintiff's subjective symptoms.

### C. The ALJ Adequately Developed the Administrative Record

Plaintiff argues that the ALJ did not adequately develop the administrative record, because he failed to consider Plaintiff's subjective symptoms, cherry-picked from the record to support his conclusions, and failed to seek additional evidence from medical sources to clarify conflicts or ambiguities. (Pltf. Br. 14-17)  As Judge Gorenstein noted, these arguments simply repeat Plaintiff's contentions that the ALJ did not adequately support his findings, and that he improperly assessed Plaintiff's credibility.  (R&R at 22)  Moreover, Plaintiff fails to identify any portion of the record that the ALJ failed to consider, or issues about which the ALJ should have sought further clarifying evidence.  (R&R at 22)  For these reasons and the reasons stated above, Judge Gorenstein did not clearly err in rejecting Plaintiff's argument that the ALJ failed to properly develop the administrative record.

### D. The Commissioner Met His Burden of Demonstrating That There Is Other Work That Plaintiff Can Perform

At the final step of the sequential process for assessing disability benefits eligibility, the Commissioner must determine if there is other work that a claimant can perform, if he is unable to perform his past work.  Rosa, 168 F.3d 77.  The Commissioner bears the burden at the fifth step to prove that the claimant is capable of working.  Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).  Social Security Administration regulations provide that a determination of whether jobs exist in the national economy will be based on "administrative notice of reliable job information available from various governmental and other publications" and "may use the services of a vocational expert or other specialist."  20 C.F.R. § 404.1566(d)-(e).

Here, based on the testimony of a vocational expert, the ALJ found that Plaintiff could perform the job of electrical assembler, and concluded that a significant number of jobs in that category exist in the national, state, and local economies.  (See R. at 20-21)

11

Plaintiff argues that the ALJ's decision was "predicated on unreliable vocational expert testimony." (Pltf. Br. 20) Plaintiff contends that the vocational expert provided statistics for a collection of jobs rather than a specific job, that he failed to provide a description of the electrical assembler job, and that there is no scientifically reliable method to determine the actual number of jobs available. (Pltf. Br. 20-23) Judge Gorenstein properly determined that these arguments have no merit. While the statistics provided by the vocational expert include several specific jobs under the occupation of electrical assembler, each has at most the requirements of electrical assembler, such that Plaintiff is able to perform any of the jobs. (R&R at 24 (citing Soc. Sec. Admin., Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, SSR 00-4p, 2000 WL 1898704, Dec. 4, 2000)) In addition, the vocational expert identified the electrical assembler job in response to the ALJ's detailed description of Plaintiff's condition and abilities, such that it was clear that the vocational expert believed that the job would not require greater abilities than those possessed by Plaintiff. (R&R at 23 (citing R. at 51-54)) Finally, the sources of data used by the vocational expert are expressly approved by the Social Security Administration. See 20 C.F.R. § 404.1566(d); SSR 00-4p, 2000 WL 1898704; (see also R&R at 23 (noting that the ALJ may consider evidence that would not be admissible under the rules of evidence) (citing 20 C.F.R. § 404.950(c)); Def. Br. at 27 (citing cases relying on vocational experts)) Judge Gorenstein's determination that the Commissioner met his burden at step five of the sequential process is not clearly erroneous.

## **CONCLUSION**

For the reasons stated above, the Magistrate Judge's R&R is not clearly erroneous and in fact fully conforms with the law. Accordingly, the Court adopts the findings and conclusions set forth in the R&R. The Commissioner's motion for judgment on the pleadings is granted (Dkt. No. 14), and Plaintiff's motion for judgment on the pleadings is denied (Dkt. No. 11) The Clerk of the Court is directed to terminate the motions and to close this case.

Dated: New York, New York
       September 9, 2013

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge